**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ZONGXING WANG,<br><br>Plaintiff,<br><br>v.<br><br>BIOSTL; BIOGENERATOR d/b/a BIOGENERATOR VENTURES; and CHARLES BOLTEN,<br><br>Defendants. | No. 24 C 4844<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Zongxing Wang alleges that his former employers, BioSTL and BioGenerator Ventures ("BGV"), and their officer Charles Bolten, failed to pay him compensation in violation of the Illinois Wage Payment and Collection Act and in breach of an oral contract. Defendants have moved to dismiss for lack of personal jurisdiction. That motion is granted.

**Background**

Wang resided in Chicago when he applied for a job with Defendant BGV through a LinkedIn posting in April 2022. BGV is the financing arm of Defendant BioSTL, a non-profit corporation. Together, their mission is to support entrepreneurs in the St. Louis region by connecting them to venture capital. BGV hired Wang as a director, and Wang relocated to St. Louis, where he began working in BGV's offices and maintained a residence.

Wang's employment as a director with BGV was terminated on January 15, 2023. However, Wang continued to use office space in BGV's St. Louis office through

November 16, 2023, and had access to a mailbox and parking place there. Wang extended his residential lease in St. Louis for six months beginning in January 2023.

The parties dispute the nature and extent of their relationship after Wang's employment as a director was terminated. After Wang's termination, BGV's CEO, Defendant Charles Bolten, assisted Wang in securing employment as the CEO of a start-up company in St. Louis. And during this time period, BGV made at least one payment to Wang for consultant work. Wang's claim in this case is that Defendants failed to pay him all the compensation he was owed between January and November 2023.

After he was terminated as a director, Wang sometimes worked remotely in Chicago. None of the Defendants required Wang to work remotely. However, there is evidence that they knew he sometimes worked from Chicago, including a W-9 tax form Wang provided to BGV, which listed a residential address in the Chicago suburbs.

During this time period, Wang communicated with Bolten about several investment prospects that were associated with the University of Chicago. Bolten had BGV signed at least two non-disclosure agreements ("NDAs") with the University of Chicago in order review the technology related to the potential investments.

The motion currently before the Court is Defendants' second motion to dismiss for lack of personal jurisdiction. In response to Defendants' first motion, Wang cross-moved for jurisdictional discovery. The Court granted Wang's motion based on the following three paragraphs in his declaration attached to his motion:

> 8. During my time working at BSTL/BGV, Bolten expressed an interest in investment opportunities tied to Professor Chuan He of the University of Chicago, a renowned chemical biologist.
>
> 9. After my role as Director for BSTL/BGV ended around the end of 2022, I transitioned into a consultant role for BSTL/BGV. In that role, I searched for companies to sign with that would also serve as investment opportunities for BSTL/BGV and other stand-alone investment opportunities for BSTL/BGV. In that role, I referred to Charles Bolten potential investment opportunities with professors from the University of Chicago. For some of these, Bolten signed nondisclosure agreements with the professors from the University of Chicago so the professors could discuss their patents and technologies with me on behalf of the Defendants. I could then freely discuss the patents and technologies with Bolten and BSTL/BGV.
>
> 10. During my work in the consultant role, I would often communicate with Bolten via phone and email about work when I was in Chicago and he was in St. Louis. The Defendants knew I was performing much of my work in this role while I was in Chicago.

*See* R. 28 (referencing R. 21-1). The Court found that these three contentions constituted a prima facie basis for the Court to exercise personal jurisdiction in that they created a question of fact regarding whether Defendants had directed Wang to perform work in this forum. The Court ordered jurisdictional discovery in order to resolve the factual dispute.

The parties completed jurisdictional discovery, and Defendants have again moved to dismiss for lack of personal jurisdiction. Generally, after jurisdictional discovery, the Court holds a hearing to resolve the disputed facts underlying the plaintiff's prima facie case of personal jurisdiction. *See Hyatt Int'l Corp. v. Coco*, 302

F.3d 707, 713 (7th Cir. 2002) ("If personal jurisdiction is challenged under Rule 12(b)(2), the court must decide whether any material facts are in dispute. If so, it must hold an evidentiary hearing to resolve them[.]"). Here, however, the jurisdictional discovery undermined the jurisdictional relevance of Wang's assertions in the affidavit he attached to his first motion. Thus, discovery has shown that Wang cannot establish a prima facie case of personal jurisdiction and there is no genuine dispute to resolve, so the Court grants Defendants' motion without a hearing. *See B.D. by & through Myers v. Samsung Sdi Co.*, 143 F.4th 757, 762 (7th Cir. 2025) ("Where, as here, the parties engaged in jurisdictional discovery but the district court did not hold an evidentiary hearing before resolving a Rule 12(b)(2) motion, the plaintiff must make only a prima facie case for personal jurisdiction.").

**Analysis**

For the Court to exercise personal jurisdiction over a defendant, "the defendant's contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state." *Liu v. Monthly*, 170 F.4th 1090, 1093 (7th Cir. 2026). Wang argues that the "corporate Defendants direct their conduct into Illinois in the following ways":

> (i) reaching out to intellectual capital (*i.e.*, people) to recruit them to work for them in St. Louis,
> (ii) knowingly allowing their employees at times to work from Illinois,
> (iii) sending wage payments to employees in Illinois,
> (iv) marketing their services, events, and investment opportunities to Illinois based people, entities, and potential investor groups,

> (v) cohosting events with Illinois-based entities,
> (vi) sending their employees to attend networking events in Illinois and Chicago,
> (vii) communicating with Illinois based entities and people about potential investment opportunities, and
> (viii) entering into nondisclosure agreements ("NDAs") with entities and people based in Chicago so it can perform due diligence on potential investment opportunities.

R. 78 at 1-2.

To the extent these allegations are true—and there does appear to be evidence of most in the record—many of these activities are unrelated to Defendants' relationship with Wang, and so are irrelevant to whether the Court has specific personal jurisdiction over Defendants for Wang's claims specifically. *See Liu*, 170 F.4th at 1093 ("the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities"). Wang concedes that there is no basis for this Court exercise general personal jurisdiction over Defendants. *See* R. 21 at 2 n.1.

By contrast, Wang argues that the following are the facts specific to him that form a basis for the Court to exercise personal jurisdiction over Defendants:

- "[T]he Defendants initiated contact with him when he was in Illinois, negotiated with him when he was in Illinois, induced him to travel to St. Louis for an in-person interview and ultimately offered him a job as a Director for BGV."

- "Wang signed the offer letter when he was in Chicago."

- "BGV sometimes allowed him to work remotely from Illinois."

- "[W]hen Wang worked in the second role, he did much of the work (*i.e.,* performed the contract) in Chicago, the Defendants knew it, and they paid him for at least some work he did there."

- "Defendants . . . entered into at least two nondisclosure agreements ("NDAs") with the University of Chicago."

R. 78 at 2. These five bulleted contentions are summarized in the following three arguments which the Court will address below: (1) Defendants sought Wang's employment because of his connection to the University of Chicago; (2) Defendants knew Wang was working remotely from Chicago; and (3) Wang investigated investment opportunities at the University of Chicago, presented them to Defendants, and communicated with them about those opportunities.

Regarding the first, Wang contends that Defendants sought out his employment because of his connection to the University of Chicago. There is simply no evidence that this is true. Rather, Wang responded to a job ad he saw online. Certainly, Wang's experience and education at the University of Chicago was part of what made him qualified to be hired by Defendants. But Wang cites no evidence that Defendants sought to hire a person with connections to the University of Chicago specifically. Furthermore, once Defendants hired Wang, St. Louis became his primary residence and work location.

Wang next argues that after he was terminated as a director and began working as a consultant, Defendants knew he was working remotely from Chicago and paid him for work he did there. There is evidence that this is true, including a W-9 tax form Wang submitted to Defendants for payment. Regardless, maintaining an employee in a certain forum state by itself is insufficient to establish personal jurisdiction over the employer, absent some additional evidence that the employer

specifically sought an employee in that particular forum state. This is because a defendant's "relationship to the forum state must arise out of contacts that the defendant himself creates with the forum state." *Rogers v. City of Hobart, Indiana*, 996 F.3d 812, 820 (7th Cir. 2021). District courts have held that an employee's unilateral decision to work remotely from a certain forum state is not evidence that the employer created a contact with that forum state. *See, e.g.*, *Lord v. Capstone Surgical Techs., LLC*, 2022 WL 1573636, at *4 (E.D. Wis. May 5, 2022) ("The fact that [the employee] unilaterally chose Wisconsin as his remote work location is insufficient to link [the employer] with Wisconsin."); *Shott v. Rush Univ. Med. Ctr.*, 2022 WL 1576814, at *3 (E.D. Wis. Apr. 28, 2022) ("[T]he fact that [the employee] unilaterally chose Wisconsin as her remote work location is insufficient to link [the employer] with Wisconsin."); *Schenk v. Knightscope, Inc.*, 2018 WL 1726425, *3-4 (N.D. Ill. Apr. 10, 2018) (dismissing the complaint for lack of personal jurisdiction because the "contract provides for plaintiff to work remotely, meaning he could live and work wherever he chose. It is simply fortuitous that he lives in Illinois."); *see also Waseem v. Stability AI, Inc.,* 2024 WL 5168098, at *6 (E.D. Va. Dec. 19, 2024) ("employment of a single remote employee residing in the forum state, without more, does not show that the employer purposefully availed itself to the forum state." (citing cases)). Absent additional evidence the employer purposely directed its conduct towards the forum state, the plaintiff employee is the "only link between the defendant and the forum," and that is not enough to establish personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Wang further argues the Court should exercise personal jurisdiction over Defendants because he investigated investment opportunities at the University of Chicago, presented them to Defendants, and communicated with them about those opportunities. Yet, Wang has identified no evidence demonstrating that Defendants initiated contact with the University or directed him to do so or otherwise explore investment opportunities in Chicago. Indeed, Wang was deposed in this case—including by his own counsel—yet he does not identify any deposition testimony to that effect. Instead, the record simply shows Wang suggesting to Bolten that certain technology developed at the University might be a good prospect for BGV. *See* R. 63-22; R. 63-23.

According to Wang, Defendants' intent to direct their conduct to Chicago is demonstrated by their signing NDAs with the University. But merely "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 493 (7th Cir. 2014). And while Wang contends that the "benefit" Defendants could have derived from the NDAs is a sufficient basis for the Court to exercise personal jurisdiction over Defendants, he cites no authority in support. The fact of a potential benefit does not suggest Defendants "initiated [the] business relationship." *See id.* at 494. Instead, Wang's suggestion of an investment opportunity in Chicago represents a "fortuitous" connection between Defendants and this forum that falls short of minimum contacts. Without testimony from Wang that Defendants directed him to explore investment opportunities in Chicago, the mere fact that Defendants

signed the NDAs does not constitute a prima facie case that Defendants purposefully directed their conduct towards this forum.[1]

In adjudicating Defendants' first motion to dismiss, the Court viewed Wang's affidavit in the light most favorable to him and inferred that Defendants directed Wang to undertake his work in Chicago. But discovery has shown that the Court's inferences from the statements in Wang's affidavit were unfounded. Without those inferences, the affidavit statements themselves are insufficient to establish a prima facie case of personal jurisdiction, or to create a factual dispute requiring a hearing. At bottom, Wang should have personal knowledge of whether Defendants directed him to seek investment opportunities in Chicago. His failure to testify accordingly at his deposition, or to submit a supplemental affidavit making such contentions, means he cannot satisfy his burden to demonstrate that the Court has personal jurisdiction over Defendants.

[1] Perhaps if Wang's claims arose from the NDAs themselves, the action of signing those agreements with an entity in this District would be sufficient to establish personal jurisdiction over Defendants for such claims. But here, Wang's claims about his compensation do not arise from the NDAs.

## Conclusion

Therefore, Defendants' motion to dismiss [63] is granted. Defendants' motion for a hearing [82] is denied. Wang's case is dismissed without prejudice.

ENTERED:

Thomas M Durkin

Honorable Thomas M. Durkin
United States District Judge

Dated: August 26, 2026